# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BRADLEY A. PLAISTED, et al.,

    Plaintiffs,

  v.

DONALD W. HARPER, II, et al.,

    Defendants.

Case No. 1:24-cv-634

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Plaintiffs Bradley A. Plaisted, Jacqueline M. Holden, and Medardo Funez claim that Defendants Donald W. Harper, II, and Giles & Harper, LLC, violated their rights under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and committed slander of title when attempting to recover Medicaid costs through Ohio's Medicaid Estate Recovery Program. Defendants claim that Holden's and Funez's claims cannot proceed because those two Plaintiffs lack Article III standing. For the reasons discussed below, the Court **DENIES** Defendants' Motion for Partial Judgment on the Pleadings (Doc. 7).

## BACKGROUND

No homeowner wants a cloud on their title. But that's what Plaintiffs allege happened here. Before diving headlong into the facts underlying this dispute, however, a little legal background is in order.

Federal law requires states to seek reimbursement for certain costs paid on behalf of a Medicaid beneficiary after that beneficiary's death. 42 U.S.C. §§ 1396a(a)(18), 1396p. Ohio carries out that directive through its Medicaid Estate

Recovery Program (the Program). As its name implies, the Program attempts to recover, from a now-deceased Medicaid beneficiary's estate, any amounts owed the State as repayment for certain Medicaid benefits. Ohio Rev. Code § 5162.21. But the program comes with limits. The State, for example, cannot collect on a Medicaid reimbursement claim against the estate's property during a surviving spouse's or surviving disabled child's lifetime. 42 U.S.C. § 1396p(b)(2); Ohio Rev. Code § 5162.21(C)(1). Nor can the State place a lien on a decedent-beneficiary's former home so long as a surviving spouse or surviving disabled child lives there. 42 U.S.C. § 1396p(a)(2); Ohio Rev. Code § 5162.211(C).

Plaintiffs allege that Defendants engaged in precisely that forbidden conduct here. Each of the three Plaintiffs claim that Defendants—who are apparently under contract with the State to serve as "debt collectors" for the Program—unlawfully asserted a lien on their respective homes after either their spouse or mother died. (Compl., Doc. 1, #2). But because the current motion involves only two of the Plaintiffs—Holden and Funez—the Court limits its discussion to their allegations.

Holden is a disabled retiree who lives in Clermont County. (*Id.* at #3). Until her mother's death in 2023, Holden had a one-half interest in her home, which she owned jointly with rights of survivorship with her mother. (*Id.* at #8). Now she's the sole owner. (*Id.*). Holden's mother, moreover, apparently received Medicaid benefits during her lifetime. (*Id.*). So, after Holden's mother died, Defendants sent Holden a letter that informed her Ohio had a $372,435.73 claim against her mother's estate for Medicaid services. (*Id.*; *see also* Holden Letter, Doc. 1-6). The letter also requested

2

that Holden complete an attached questionnaire, which sought information about her mother's estate, within thirty days. (*See* Doc. 1-6). After that, Defendants filed an Affidavit of Fact Relating to Title with the Clermont County Recorder's Office. (Doc. 1, #9; Holden Aff. of Fact, Doc. 1-7). That affidavit listed Holden's home address and parcel number, and stated, among other things, that Ohio "may have a claim against [Holden's mother's estate] in the amount of $369,751.23"[1] for Medicaid services rendered. (Doc. 1-7, #30). It further said that Ohio, via its "Medicaid Recovery Statute, maintains a one-half (1/2) interest or up to the claim amount, whichever is less, in [Holden's property]." (*Id.*).

Based on the letter she had received, Holden "believed that Defendants were trying to take away her home by asserting an interest" in it and worried she and her sister would be left homeless. (Doc. 1, #8–9). And she understood the affidavit to place a lien on her home. (*Id.* at #9). Given her concerns, she hired an attorney to "restore clear title." (*Id.* at #10). Defendants eventually released the affidavit, but not before causing Holden "fear, anxiety, worry, and emotional distress" over the situation. (*Id.*).

Funez's allegations largely mimic Holden's. Funez lives in Hamilton County. (*Id.* at #3). He owned his home jointly and with rights of survivorship with his wife until her death in 2024. (*Id.* at #10–12). And like Holden's mother, Funez's wife received Medicaid benefits during her lifetime. (*Id.* at #12). So after her death, Defendants sent Funez a letter and questionnaire identical to the one they sent

---

[1] It seems that interest accounts for the different claim amounts stated in Holden's letter and Holden's affidavit. (*Compare* Doc. 1-6, #29 ($372,435.73), *with* Doc. 1-7, #30 ($369,751.23, plus interest)). The same goes for Funez. (*Compare* Doc. 1-9, #34 ($66,043.29), *with* Doc. 1-10, #37 ($65,398.27, plus interest)).

3

Holden, except that the amount asserted against Funez's wife's estate was $66,043.29. (Funez Letter, Doc. 1-9). Defendants also filed an Affidavit of Fact Relating to Title with the Hamilton County Recorder's Office. (Doc. 1, #12; Funez Aff. of Fact, Doc. 1-10). It contained the same language as Holden's affidavit but reflected a claim in the amount of $65,398.27 that Ohio may have against Funez's wife's estate. (Doc. 1-10, #37). And it listed Funez's home address and parcel numbers (his lot covers two parcels) as the real property at issue. (*Id.* at #37–38). The affidavit also expressly acknowledged Funez and the impact his occupancy in the home may have on collection efforts. Specifically, the affidavit stated that his wife "may have left a surviving spouse, Medardo Funez, and by law the Medicaid claim is deferred until the passing of the surviving spouse. The Medicaid claim will become enforceable upon the death of the spouse." (*Id.* at #38).

Funez alleges he "thought that [those documents] meant he would have to sell his house" to pay the claim and "felt that [Defendants] wanted him to be homeless." (Doc. 1, #13). So, like Holden, Funez obtained counsel to "restore clear title." (*Id.* at #14). But unlike Holden, Defendants did not remove Funez's affidavit. (*Id.*). Now, he alleges that he's emotionally distressed because he "does not believe he can borrow against his house" to obtain funds for a new heating system because of the "lien" Defendants filed. (*Id.*).

Dismayed by the letters they received and the affidavits Defendants filed, Plaintiffs brought this two-count action on November 4, 2024. First, they claim Defendants violated the FDCPA by filing affidavits that falsely assert a non-existent

4

interest in Plaintiffs' homes. (*Id.* at #14–16). Second, they assert slander of title under Ohio law, again based on the affidavits, which apparently include "statements disparaging each of the Plaintiffs' titles." (*Id.* at #16–17).

Defendants answered, denying liability. (Doc. 5). Then, they moved for judgment on the pleadings as to Holden's and Funez's claims. (Doc. 7). Defendants argue that those two Plaintiffs lack standing to sue because they did not suffer a cognizable injury, did not establish traceability, and did not allege a redressable harm. (*See generally id.*).

Plaintiffs[2] responded, arguing that they satisfy Article III's standing requirements. (Doc. 8). Defendants replied. (Doc. 9). And at Plaintiffs' behest, the Court held a hearing on April 23, 2025. With that, the motion is ripe.

## LEGAL STANDARD

Recall that Defendants' motion requests judgment in their favor, on the pleadings, under Federal Rule of Civil Procedure 12(c). (Doc. 7, #57). And their motion argues only that Plaintiffs lack Article III standing to sue. (*Id.* at #58–71).

As a general matter, challenges to standing "are properly brought under Fed. R. Civ. P. 12(b)(1) for a lack of subject-matter jurisdiction." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *2 (6th Cir. Nov. 6, 2023). That said, subject-matter jurisdiction is non-waivable, so "[i]f the court determines at any time that it lacks

---

[2] From here on out, "Plaintiffs" refers only to Holden and Funez, as the Opinion and Order does not address Plaisted.

5

subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Moreover, once standing is questioned (whether by a party or the Court), "[t]he plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met." *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002); *see also Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) ("[T]he *plaintiff* has the burden of proving jurisdiction in order to survive the [challenge to standing]."). Further, a dismissal for lack of standing is without prejudice because it "allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of some court." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

What a plaintiff must show to establish standing changes as litigation proceeds. Here, whether raised through Rule 12(b)(1) or 12(c), the challenge arises at the pleading stage, so it is those requirements that govern. A challenge to the court's subject-matter jurisdiction at the pleading stage can be either facial or factual. *Id.* Defendants here mount a facial attack. (Doc. 7, #63). "A facial attack ... merely questions the sufficiency of the pleading." *Ohio Nat'l Life Ins.*, 922 F.2d at 325 (emphasis omitted). "When ruling on a motion to dismiss for lack of standing or a facial challenge to its subject-matter jurisdiction under Rule 12(b)(1), the district court must accept all material allegations of the complaint as true."[3] *Phillips v.*

---

[3] Although the Court accepts Plaintiffs' well-pleaded allegations as true, they are just that—allegations.

6

*Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019). That said, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions," as those do not suffice to establish standing. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (quotation omitted).

## LAW AND ANALYSIS

As noted, Defendants challenge only Holden's and Funez's standing to sue. "Standing stems from the Constitution's mandate that federal courts may decide only 'Cases' or 'Controversies.'" *Vonderhaar v. Vill. of Evendale*, 906 F.3d 397, 400–01 (6th Cir. 2018) (citing U.S. Const. art. III, § 2, cl. 1). Consistent with that language, standing is designed to ensure that federal courts decide live disputes, rather than "issue advisory opinions or address statutes 'in the abstract.'" *L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023) (quoting *California v. Texas*, 593 U.S. 659, 672 (2021)).

Standing requires a plaintiff to establish that: (1) he or she suffered a concrete, particularized, and actual or imminent injury; (2) the injury is traceable to the defendant's conduct; and (3) a favorable ruling would redress that injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). As for the first element, "[a]n injury is 'concrete,' and therefore cognizable under Article III, when it is a type of injury that bears a 'close relationship' to a harm traditionally recognized at common law." *Barnett v. Kroger Co.*, No. 1:22-cv-544, 2024 WL 2078209, at *3 (S.D. Ohio May 8, 2024) (quoting *TransUnion*, 594 U.S. at 425). The second and third elements, for their part, often end up being "flip sides of the same coin." *Food & Drug Admin. v.*

*All. for Hippocratic Med.*, 602 U.S. 367, 380–81 (2024) (quotation omitted). That is because, if a plaintiff's injury traces back to a defendant's action, then "enjoining the action or awarding damages … will typically redress that injury." *Id.* at 381. And critically, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431.

Here, Defendants challenge each of the three elements. They argue that neither Holden nor Funez suffered a "flesh-and-blood or dollars-and-cents" injury or any concrete intangible injury. (Doc. 7, #65–67 (quoting *Huff v. Telecheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019)), 69–70). And Defendants add that the allegations do not establish traceability or redressability. (*Id.* at #68, 70–71). Plaintiffs, unsurprisingly, disagree on all fronts. (*See generally* Doc. 8). The Court takes each element in turn.

Start with injury, and recall that Plaintiffs allege statutory violations of the FDCPA and state-law slander of title. Although the FDCPA creates a private cause of action, that "statutory directive to open the doors to court" does not, by itself, confer standing. *Garland v. Orlans, PC*, 999 F.3d 432, 436 (6th Cir. 2021). Like any other action, Plaintiffs must have "suffered a concrete injury of some kind" to bring their claims. *Id.*; *see also Crawford v. L. Offs. of Brett Borland*, No. 1:23-cv-191, 2024 WL 187825, at *4 (S.D. Ohio Jan. 12, 2024). Here, Plaintiffs offer five theories of injury: (1) infringement of property rights, (2) invasion of privacy, (3) reputational harm,

8

(4) incurrence of attorneys' fees, and (5) emotional distress.[4] (Doc. 8, #78–86). Ultimately, because the Court agrees that Plaintiffs suffered an injury for Article III purposes based on the property-infringement theory, it need not (and thus does not) reach the other theories of alleged harm.

In support of the property-infringement theory of injury, Plaintiffs allege that the affidavits Defendants filed injured them by improperly placing a cloud on the title to their properties. (Doc. 1, #9–10, 12–14). That's enough to establish an injury under Article III. An "encumbrance on [one's] property [i]s a tangible harm sufficient to give [a plaintiff] standing for his claims." *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022); *cf. Connecticut v. Doehr*, 501 U.S. 1, 11 (1991) (noting that a clouded title can "significant[ly]" affect "property interests"). Both affidavits filed as to Holden's and Funez's respective properties appear to be "encumbrances"—they assert that the State "maintains a one-half (1/2) interest or up to the claim amount, whichever is less, in the [properties]." (Doc. 1-7, #30; Doc. 1-10, #38). The Court agrees that asserting such an interest in Plaintiffs' properties, whether formally filed as a lien or not, clouded their titles.

A simple hypothetical illustrates. Suppose a would-be homeowner wishes to purchase a property. All else equal, is that prospective buyer more likely to purchase a property in which no third-party has asserted an interest or a property in which a third-party has? They would almost certainly choose the former. That same logic

---

[4] The Court notes that Plaintiffs did not assert an injury based on a statutory violation alone. *See, e.g., Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021).

9

applies here. In filing the affidavits—affidavits that declared the State's interest in Plaintiffs' properties—Defendants cast doubt on, or clouded, Plaintiffs' titles. *Waker v. Lawson*, 170 N.E.3d 1264, 1271 (Ohio Ct. App. 2021) ("A cloud on a title is a defect in title 'that has a tendency even in the slight degree, to cast doubt upon the owner's title.'" (quotation omitted)). Of course, there's the separate question of whether Defendants *improperly* did so. That question, however, goes to the merits of Plaintiffs' claims and is outside the scope of the instant motion. For now, the Court is satisfied that Plaintiffs have sufficiently alleged injury based on Defendants filing affidavits that clouded title to their properties.

That alleged injury also satisfies the traceability prong. The injury Plaintiffs allege (clouded title) traces back directly to Defendants' conduct (filing the affidavits that allegedly clouded title). So Plaintiffs have established this element.

That leaves redressability. Plaintiffs easily clear this hurdle, too. They request injunctive relief and damages (among other things), (Doc. 1, #17), both of which the Court has the power to provide, and both of which would offer redress for their alleged harm. *Food & Drug Admin.*, 602 U.S. at 381. All told, then, Plaintiffs Holden and Funez have standing to bring their claims.

Defendants resist that conclusion. They argue that under Ohio law the affidavits are categorically not liens, which means they cannot cloud Plaintiffs' titles or otherwise encumber their properties. (Doc. 7, #66; Doc. 10, #93–96). And without a clouded title, Plaintiffs did not suffer an injury sufficient to establish standing. (Doc. 10, #93–96). Defendants are right that Ohio law seems to draw a line between the

10

legal effect of an affidavit filed under Ohio Revised Code § 5301.252 (the provision under which Defendants filed the affidavits here) and that of a lien or deed. *See Green v. Lemarr*, 744 N.E.2d 212, 224–25 (Ohio Ct. App. 2000); *Bogan v. Keith*, 2023-Ohio-4159, ¶ 19 (2d Dist.), *appeal not allowed*, N.E.3d 1219 (Ohio Ct. App. 2024). But Defendants' reliance on those cases at this stage is misplaced.

First, federal law (not state law) controls when deciding whether a plaintiff established an injury sufficient to confer Article III standing. *Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.*, 87 F.4th 743, 752 n.2 (6th Cir. 2023) ("Standing in federal court is a matter of federal, not state, law." (citing *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013))). To be sure, where the alleged injury is interference with property rights, state law comes into play to some extent, as state law creates such rights in the first instance. But here, there is no question that Plaintiffs have an ownership interest under state law; the only question is whether the affidavits at issue arguably *interfered with* that state-law interest. And on that question, Ohio courts' determination that such affidavits do not cloud title is not dispositive on the federal is-there-harm question,[5] any more than it would be if Ohio were to enact a law recognizing as harm something that federal law does not. *See Hollingsworth*, 570 U.S. at 715 (noting that states cannot enact state law recognizing certain conduct as constituting "harm" and thereby issue litigants a "ticket to the federal courthouse"). And, as a matter of federal standing law, when it comes to state-

---

[5] It is also worth noting that, in contrast to *Green* and *Bogan*, there's at least one Ohio case that suggests an affidavit of fact filed under § 5301.252 *can* potentially cloud one's title. *Carman v. Entner*, No. 13978, 1994 WL 28633, at *6 (Ohio Ct. App. Feb. 2, 1994).

11

law created property rights, harm is not limited to "liens" but extends to "encumbrances" more generally, with federal law supplying the content of that latter term. *Toste*, 2022 WL 4091738, at *4. Here, for the reasons noted above, the Court concludes that the affidavits Defendants filed constitute encumbrances. That's sufficient to establish a federally-cognizable injury.

To be clear, the Court is not suggesting that cases like *Green* and *Bogan* are irrelevant to this case. To the contrary, in litigating the *merits* of this case the parties will have to grapple with the affidavits' legal status under Ohio law and the propriety of Defendants filing them. But *Green* and *Bogan* do not say one way or the other whether an affidavit that allegedly asserts an improper interest in someone's property is sufficient to establish concrete injury, and, in turn, *standing*. Only that second question—standing—is at issue here. True, the merits questions and the standing question overlap in some ways, but they are distinct questions. For present purposes, the Court is persuaded that Plaintiffs have sufficiently alleged standing.

## CONCLUSION

For the above reasons, the Court **DENIES** Defendants' Motion for Partial Judgment on the Pleadings (Doc. 7).

**SO ORDERED.**

May 13, 2025
 **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**