UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRADLEY A. PLAISTED, et al.,

        Plaintiffs,

                                  Case No. 1:24-cv-634

    v.

                                  JUDGE DOUGLAS R. COLE

DONALD W. HARPER, II, et al.,

        Defendants.

## OPINION AND ORDER

Plaintiffs Bradley A. Plaisted, Jacqueline M. Holden, and Medardo Funez bring claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and state-law slander of title claims against Defendants Donald W. Harper, II, and Giles & Harper, LLC, regarding letters and "Affidavits of Fact" issued in connection with Ohio's Medicaid Estate Recovery Program. (*See generally* Compl., Doc. 1). Defendants now move to dismiss, (*see* Doc. 15), contending that all three Plaintiffs fail to state a claim. The Court agrees, so it **GRANTS** Defendants' motion.

## BACKGROUND

Plaisted is a veteran and church pastor who resides in Hamilton County, Ohio. (Doc. 1, #3). Holden is a disabled retiree who resides in Clermont County, Ohio. (*Id.*). And Funez is a translator who resides in Hamilton County, Ohio. (*Id.*). Plaintiffs allege that Defendant Harper and his Ohio law firm, (*see id.*), violated the FDCPA and slandered Plaintiffs' titles to their respective homes by sending Medicaid Estate

Recovery letters to each of them and recording "Affidavits of Fact," which supposedly

"assert[] liens against each of Plaintiffs' homes," (*id.* at #2).

In a May 13, 2025, Opinion & Order, the Court denied Defendants' Motion for

Partial Judgment on the Pleadings, (*see* Doc. 11), in which Defendants argued that

Plaintiffs lacked Article III standing, (*see* Doc. 7). As the Court explained, Ohio's

Medicaid Estate Recovery Program (the Program) is how the state carries out its

federal obligation to seek reimbursement for costs paid to deceased Medicaid

beneficiaries consistent with the limits imposed by statute:

> Federal law requires states to seek reimbursement for certain costs paid on behalf of a Medicaid beneficiary after that beneficiary's death. 42 U.S.C. §§ 1396a(a)(18), 1396p. Ohio carries out that directive through its Medicaid Estate Recovery Program (the Program). As its name implies, the Program attempts to recover, from a now-deceased Medicaid beneficiary's estate, any amounts owed the State as repayment for certain Medicaid benefits. Ohio Rev. Code. § 5162.21. But the program comes with limits. The State, for example, cannot collect on a Medicaid reimbursement claim against the estate's property during a surviving spouse's or surviving disabled child's lifetime. 42 U.S.C. § 1396p(b)(2); Ohio Rev. Code § 5162.21(C)(1). Nor can the State place a lien on a decedent-beneficiary's former home so long as a surviving spouse or surviving disabled child lives there. 42 U.S.C. § 1396p(a)(2); Ohio Rev. Code § 5162.211(C).
>
> Plaintiffs allege that Defendants engaged in precisely that forbidden conduct here. Each of the three Plaintiffs claim that Defendants—who are apparently under contract with the State to serve as "debt collectors" for the Program—unlawfully asserted a lien on their respective homes after either their spouse or mother died."

(Doc. 11, #101–02).

Defendants' motion was directed at "only two of the Plaintiffs—Holden and

Funez," and so the Court limited its discussion accordingly. (*Id.* at #102). But now

that each of Plaintiffs' claims are properly before the Court on a motion to dismiss, the Court recites the relevant background as to each Plaintiff.

Plaisted is the "surviving spouse of Nannette Andrea Plaisted, who died on December 8, 2022." (Doc. 1, #4). The Plaisteds acquired title to real property located at 56 Glendale Street, Cincinnati, OH 45216 (the Plaisted home) in 1984. (*Id.*; *see* Doc. 1-1 (Plaisted deed)). From approximately 2018 until her death in December 2022, Nannette received Medicaid benefits in connection with a terminal illness.[1] (Doc. 1, #4). Then, on December 12, 2023, shortly after Nannette passed, Defendants sent Plaisted a letter. (*Id.* at #5; *see* Doc. 1-2 (Plaisted letter)).

The contents of this letter—or, rather, how to properly characterize those contents—figure centrally in the parties' dispute. According to Plaisted, the letter was an effort to collect a $67,604.28 Medicaid Estate Recovery claim. (Doc. 1, #5). That figure appears near the top of the letter. (*See* Doc. 1-2, #20). But context is key here, and so the Court reproduces the entirety of the letter's body:

> Dear Bradley Plaisted:
>
> The office has learned that the above-named decedent has passed and we wish to send you our condolences.
>
> In accordance with Federal mandates, the Ohio Department of Medicaid ("ODM") has established the Medicaid Estate Recovery Program, which seeks to obtain repayment of Medicaid monies once a recipient is deceased. Pursuant to Ohio Revised Code § 5162.21, ODM has certified a claim for the amount paid for the medical care of the above-named decedent. It is a claim against assets owned by the decedent. **It is not a personal debt[] of any survivors. If there is a surviving spouse,**

---

[1] Because the Plaisteds share a last name, the Court refers to Nannette Plaisted by her first name.

3

**disabled child or minor child, the claim is deferred for the life of that person.** ODM Form 07400 is enclosed for your reference.

I have been appointed as Special Counsel to provide legal services to the State of Ohio and am sending you this notice of a claim requesting repayment for the cost of Medicaid benefits, and to determine what assets of the Decedent's exist that are available to satisfy this debt. This is an attempt to collect a debt and any information obtained will be used for that purpose.

If there is an Executor or an Attorney for the Estate, please forward this letter to them; it is the Estate Executor's responsibility to notify any family members and/or other heirs who might be affected by estate recovery. According to information provided by ODM, you may have information that aids in determining if this is an appropriate case for recovery. Please complete the enclosed form to the best of your knowledge and return to our office within 30 days of the date on this letter. Please **mail** the information to: Donald W. Harper II, Special Counsel to the Ohio Attorney General, 7247 Beechmont Avenue, Cincinnati, OH 45230 or **email** the completed form to OAG@gilesharper.com. Additional information can be found by visiting www.ohioattorneygeneral.gov.

Within 30 days of the date of this letter, if we have not received the information or you have not otherwise contacted our office regarding the requested information, I will advise the Ohio Attorney General that the obligations remain unpaid and take whatever action may be appropriate to satisfy the outstanding account balance. If you have any questions, please feel free to contact my office at (513) 621-0930 or contact us at the address noted above. Again, on behalf of the Ohio Attorney General, we are sorry for your loss.

(*Id.* (bold text in original)). The letter also included a two-page questionnaire requesting information on Nannette and her assets, as well as a frequently-asked-questions (FAQ) sheet about the Program. (*Id.* at #21–23). Among other things, the latter explains the gist of Medicaid estate recovery, clarifies which assets are subject to recovery, and describes when estate recovery "take[s] place." (*Id.* at #23). Relevant here, and consistent with the body of the Plaisted letter, the FAQ sheet explains that

"[r]ecovery from the estate will only be made [a]fter the death of the Medicaid individual's surviving spouse." (*Id.*).

Despite that, however, Plaisted "was concerned and extremely distressed at the amount of the claim stated." (Doc. 1, #5). Specifically, "[h]e was worried about the consequences of doing nothing because Defendants wrote that they would report inaction to the Ohio Attorney General. He was extremely concerned that the Ohio Attorney General would then take him to court, take his house, and that he and his daughter would be homeless." (*Id.*). According to Plaintiffs, "any attempt to collect on a Medicaid claim of a deceased Medicaid recipient against any property is prohibited during the lifetime of the surviving spouse." (*Id.* at #6).

Shortly after Defendants sent the Plaisted letter, "Plaisted also discovered that, on December 18, 2023, Defendant Donald W. Harper II, as Special Counsel to the Ohio Attorney General and on behalf of Defendant, Giles & Harper, LLC, recorded an Affidavit of Fact Relating to Title … against the Plaisted Home." (*Id.* at #5; *see* Doc. 1-3 (Plaisted Affidavit of Fact)). In the affidavit, Harper, as the affiant, declares that "[b]y virtue of the [Plaisted home] being in the name of Nan[n]ette Andrea Plaisted, deceased, the State of Ohio, in the Medicaid Recovery Statute, maintains a one-half (1/2) interest or up to the claim amount, whichever is less, in the said real estate." (Doc. 1-3, #24). Plaintiffs say that the affidavit "falsely asserts a lien" on Plaisted's home. (Doc. 1, #6). And according to Plaintiffs, any such assertion is unlawful while Plaisted continues to live in the home. (*Id.*).

Desiring to remain in his home, Plaisted had his counsel send Harper a letter requesting that Harper remove the affidavit, which Harper indicated he would not do unless Plaisted sold the property. (*Id.* at #7; *see* Doc. 1-4 (Harper/Plaisted letter)). As a result of the so-called "lien," Plaintiffs allege that Plaisted has been unable to obtain a home equity loan for modest home-improvement projects. (Doc. 1, #7). They say that Defendants' wrongful debt-collecting, title-clouding activities have caused Plaisted to endure emotional distress, and to incur lost time and attorneys' fees. (*Id.*).

While the particulars surrounding the other two Plaintiffs' claims differ, the underlying story is much the same. Holden, who is "permanently and totally disabled" as a result of a "debilitating medical incident," acquired with her mother, Lucille Fanning, title to real property located at 4130 West Fork Ridge Drive, Batavia, OH 45103, in July 2021. (*Id.* at #7–8; Doc. 1-5 (Holden deed)). Fanning received Medicaid benefits "from at least October 12, 2011." (*Id.* at #8). And "[f]or a few months of her life until her death on March 27, 2023, Ms. Fanning also received Medicaid coverage of nursing home care." *(Id.)*. On November 7, 2023, several months after Fanning's death, Defendants sent essentially the same letter to Holden that they sent to Plaisted, this time for a recovery claim totaling $372,435.73. (*Id.*; Doc. 1-6 (Holden letter)). And, again as above, Harper recorded an "Affidavit of Fact" in which he asserted that the State of Ohio "maintains a one-half (1/2) interest or up to the claim amount, whichever is less," in Holden's home. (Doc. 1, #9). Plaintiffs say that the letter and affidavit of fact are unlawful for the reasons described in connection with Plaisted. (*See id.* at #9–10).

6

Similarly, Funez, the surviving spouse of Cherie A. Bellingham, acquired title to real estate located at 1502 Aster Place, Cincinnati, OH 45224 with Bellingham in September 2018. (*Id.* at #10). Bellingham received Medicaid benefits to cover a terminal illness from "at least 2015 until her death on January 29, 2024." (*Id.* at #12). And on June 7, 2024, Defendants sent a letter consistent with the other two letters described above for an estate recovery claim of $66,043.29 (*Id.*; Doc. 1-9 (Funez letter)). A few weeks later, Funez discovered that Harper "recorded an Affidavit of Fact Relating to Title" against the Funez home. (Doc. 1, #12; Doc. 1-10 (Funez Affidavit of Fact)). Like the others, that affidavit notes a "one-half (1/2) interest or up to the claim amount, whichever is less," in the home. (Doc. 1-10, #38). Despite Funez's efforts to get the affidavit removed, (*see* Doc. 1-11 (Funez/Harper letter)), it persists, (Doc. 1, #14). Funez says that Defendants' actions have caused him emotional distress, and that the "lien" on his home likely prevents him from borrowing "against his house to get money to pay" for a much-needed heating installation. (*Id.*).

All told, Plaintiffs each assert two claims against the Defendants: (1) a claim under the FDCPA, and (2) a state-law claim for slander of title. (*Id.* at #14–17). Defendants now move to dismiss, contending that Plaintiffs have failed to adequately allege either claim. (*See generally* Doc. 15). Plaintiffs responded, (*see* Doc. 16), and Defendants replied, (*see* Doc. 18). So the matter is ripe for review.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id*.

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in [his] favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertion[s]" of fact, "formulaic recitation[s] of the elements of a cause of action," and "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up). Additionally, the Court may grant a motion to dismiss "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted).

## LAW AND ANALYSIS

A.      **Plaintiffs' Complaint Fails to State a FDCPA Violation Because the Letters and Affidavits of Fact are Not False, Deceptive, or Misleading as a Matter of Law.**

Plaintiffs' Complaint alleges violations of 15 U.S.C. §§ 1692e and 1692f. To state a claim under the former provision, a plaintiff must allege (1) that he is a "consumer" as defined by the Act, (2) that the "debt" arises out of transactions that are primarily for "personal, family, or household purposes," (3) that the defendant is a "debt collector" as defined by the Act; and (4) that the defendant violated the

8

prohibition contained in 15 U.S.C. § 1692e. *Wallace v. Wash Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2016).

The Court will focus on the fourth element here. Section 1692e bans the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute then lists nonexclusive examples of impermissible conduct. *See id.* § 1692e(1)–(16). "Whether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on whether the 'least sophisticated consumer' would be misled by defendant's actions." *Wallace*, 683 F.3d at 326 (quoting *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). Additionally, "a statement must be *materially* false or misleading to violate Section 1692e," which means that, "in addition to being technically false, [the] statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.* at 326–27 (emphasis in original) (citing *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596–97 (6th Cir. 2009)).

In applying the standard, the Court is mindful that the "hurdle to proceed from pleading to discovery [is] a low one," and that "[g]enerally speaking, 'a jury should determine whether [a] letter is deceptive and misleading.'" *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (citations omitted). Nonetheless, a court may still dismiss a claim that is "implausible on its face because even an unsophisticated consumer would not be confused, making discovery pointless and jury resolution unnecessary." *Id.* (citing *Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769, 776–77 (7th Cir. 2007)); *see also Ellis v. Solomon & Solomon, P.C.*, 591

9

F.3d 130, 135 (2d Cir. 2010) (citation omitted) ("The hypothetical least sophisticated consumer … is neither irrational nor a dolt."); *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 982 (7th Cir. 2020) (citation omitted) ("Though our unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion." (internal quotation marks omitted)).

The Court concludes that this is the rare case where dismissal is appropriate on these grounds. The Complaint alleges that Defendants violated the FDCPA by (1) using false representations regarding the "character, amount, or legal status of the debt," (2) threatening to take actions that either "cannot legally be taken" or were "not intended to be taken," (3) using false representations or deceptive means "to collect or attempt to collect any debt or to obtain information concerning a consumer," and (4) "[f]ailing to disclose in communications with Plaintiffs that they are attempting to collect a debt and that any information obtained will be used for that purpose." (Doc. 1, #15). And Plaintiffs base those allegations on both the letters and the affidavits of fact. (*Id.*). According to Plaintiffs, both sets of documents falsely led Plaintiffs to believe that they immediately owed a debt whose satisfaction would require Plaintiffs to sell their homes. (Doc. 16, #225).

Start with the letters. Plaintiffs point to several features in these missives to support their desired conclusion. They suggest, for example, that the letters contain a disingenuous or legally impossible threat, *see* 15 U.S.C. § 1692e(5), because they state that, absent a response from Plaintiffs within 30 days, Harper would "advise the Ohio Attorney General that the obligations remain unpaid and take whatever

10

action may be appropriate to satisfy the outstanding account balance." (Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). Plaintiffs also say that the letters are false, deceptive, or misleading because they state that "money is 'due,' [and] that the letter is 'an attempt to collect a debt.'" (Doc. 16, #235; *see* Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). And somehow, all that supposedly adds up to falsely representing the legal status of a debt or using deceptive means to obtain information concerning a consumer. (*See* Doc. 16, #236).

Despite the relatively forgiving standard that applies under these circumstances, Plaintiffs' argument fails as a matter of law. There is simply nothing materially false or misleading about these statements. Yes, each letter says that there is a "Total Amount Due." (Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). But how that amounts to a materially false or misleading statement, Plaintiffs do not say. And as the letters go on to explain, the reason for the amount "[d]ue" is that Ohio's Department of Medicaid "certified a claim for the amount paid for the medical care of the above-named decedent" under Ohio Revised Code § 5162.21. (Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). The letters specify that the claim is "against assets owned by the decedent" and does not represent a "personal debt[] of any survivors." (Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). To the extent that the decedent has "a surviving spouse, disabled child, or minor child," the letters explain that "the claim is deferred for the life of that person." (Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). Were that not enough, the FAQ sheets that accompanied the letters explain all of this in greater detail. (Doc. 1-2, #23; Doc. 1-6, #32; Doc. 1-9, #37). In short, the letters are not

materially false or misleading merely because Plaintiffs read the words "Total Amount Due" without regard to context. In fact, to the extent that Plaintiffs read the language "Total Amount Due" as evidencing personal liability for the debt (which the Court understands Plaintiffs to be suggesting), several aspects of the surrounding context expressly cancel the inference. In the Court's view, it is clear that, as a matter of law, no reasonable consumer who read the document, even if unsophisticated, could reach that conclusion.

Likewise, the letters are not materially false or misleading merely because they state that they are an "attempt to collect a debt." (Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). That statement itself is a FDCPA disclosure. *See* 15 U.S.C. § 1692e(11) (providing that "failure to disclose in the initial written communication with the consumer … that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" "is a violation of [§ 1692e]"). In other words, assuming that the other elements of Plaintiffs' § 1692e claim are met, the *omission* of such a statement could itself give rise to liability. Thus, "it is likely that had [Defendants] failed to include such a statement in [their] letter[s], [Plaintiffs] would have brought an additional FDCPA claim based on [Defendants'] failure to include the statutory language."[2] *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998). "To punish [Defendants] with this provision just because

---

[2] Indeed, Plaintiffs actually *do* make such an allegation in their Complaint, notwithstanding that the allegation is inconsistent with what the letters actually say. (*See* Doc. 1, #15 ("Defendants violated § 1692e by … *[f]ailing* to disclose in communications with Plaintiffs that they are attempting to collect a debt and that any information obtained will be used for that purpose." (emphasis added))). The Court declines to read the FDCPA in a manner that imposes liability on Defendants regardless of whether they include the disclosure.

12

the … letter states that it is an 'attempt to collect on a debt' would be an absurd result that [the Court] decline[s] to reach." *Id.*

Finally, there is nothing materially false or misleading about the 30-day timeframe that the letters provide for a response. The letters explain that, absent a response with the requested information within 30 days, Harper would "advise the Ohio Attorney General that the obligations remain unpaid and take whatever action may be appropriate to satisfy the outstanding account balance." (Doc. 1-2, #20; Doc. 1-6, #29; Doc. 1-9, #34). But one cannot reasonably read that sentence to suggest that Harper threatened action that was legally impermissible, or that Harper did not intend to do as he said. So again, how the sentence amounts to a materially false or misleading statement remains a mystery.

The cases that Plaintiffs cite prove the point. (*See* Doc. 16, #236). For example, in *Brown v. Card Service Center*, the letter at issue stated that, "unless [the plaintiff] made arrangements to pay within five days, the matter 'could' result in referral of the account to an attorney and 'could' result in a 'legal suit being filed.'" 464 F.3d 450, 451 (3d Cir. 2006). But "[t]hough Brown did not make arrangements for payment on her delinquent account within five days, [the defendant] did not institute a suit or otherwise enlist an attorney to assist with its collection efforts." *Id.* at 452. Thus, Brown sued, alleging that the "5-day deadline was illusory because [the defendant] never intended to bring suit against her or to refer her debt." *Id.* Brown also alleged that the defendant did not refer alleged debts to attorneys "as a matter of course." *Id.* at 455. Against that backdrop, the Third Circuit held that "[i]f Brown can prove[]

after discovery that [the defendant] seldom litigated or referred debts such as Brown's … a jury could conclude that the [defendant's] letter was deceptive or misleading vis-à-vis the least sophisticated debtor." *Id.* That is all well and good, but this case is materially different. The Complaint alleges no facts suggesting that Harper declined to act as he said he would—i.e., that he did not advise the Attorney General. Nor is there an allegation that Harper declines to advise the Attorney General "as a matter of course." In other words, the *specific* factual allegations that saved the plaintiff in *Brown* from dismissal are absent here.

Nor does *Edwards v. McCormick*, 136 F. Supp. 2d 795 (S.D. Ohio 2001), help. There, the Court held that a threat to "foreclose upon all real property of Plaintiffs" violated § 1692e(5) because that threatened action was one that the defendant "could not legally take." *Id.* at 805. But the act described in the letters here—providing certain information to the Ohio Attorney General—is action that Harper *could* legally take. *Edwards* is inapposite. And to the extent Plaintiffs read Harper's words that he would take "appropriate" "action" to imply imminent unlawful activity, the Court concludes that this is precisely the sort of "bizarre," "idiosyncratic" interpretation that is properly dismissed under Rule 12(b)(6).[3] *Enhanced Recovery Co.*, 961 F.3d at 982.

---

[3] Plaintiffs suggest that the 30-day timeframe was materially false or misleading because Harper recorded the affidavits of fact "before the 30 days expired." (Doc. 16, #236). But Plaintiffs never explain *why* that fact renders the 30-day timeframe materially false or misleading. And considering the argument on its own, the Court is not persuaded. The letters would not convey to a reasonable but unsophisticated consumer an implicit promise to refrain from recording the state's Medicaid interest for notice-giving purposes. (*See, e.g.*, Doc. 1-3, #24–25 (noting that Ohio has a Medicaid claim against the Plaisted home, but also that the claim is "deferred until the passing of the surviving spouse")).

14

Next, consider the affidavits of fact. The parties spill much ink on the question of the affidavits' effect, but the competing conclusions the parties urge are straightforward: Plaintiffs say that the affidavits falsely assert a "lien" on Plaintiffs' homes, (*see* Doc. 16, #227–34), while Defendants say that the affidavits are true and accurate in their description of the state's interest under Ohio's Medicaid Recovery Statute, (*see* Doc. 15, #214–17; Doc. 18, #248–50). The Court agrees with Defendants.

Plaintiffs' argument gets off on the wrong foot by wrongly suggesting that Harper, by filing the affidavits of fact, had imposed "liens" on Plaintiffs' homes. The point is important because Plaintiffs' entire theory of false, deceptive, or misleading conduct is that the assertion of the "liens" was "false." (Doc. 16, #228). This latter conclusion supposedly follows from the premise that Ohio Revised Code § 5162.211 imposes certain lien "requirements" with which Defendants failed to comply. So, if the affidavits of fact are indeed "liens," as § 5162.211 uses that term, admittedly that could present a problem.

But they are not liens under that statute. Ohio Revised Code § 5301.252, the Code section entitled "[r]ecording affidavit[s] relating to title," "allows for a person having knowledge of, or competency to testify about, facts pertaining to certain enumerated matters that *may* affect the title to real estate to record an affidavit stating those facts in the county recorder's office of the county where the property is situated." *Bradford v. Reid*, 710 N.E.2d 761, 763–64 (Ohio. Ct. App. 1998) (emphasis in original). "The filing itself creates no interest in the property or encumbrance on

15

the title." *Id.* at 764. Rather, it's only "*evidence* of an adverse interest, not an interest itself." *Id.*

By contrast, a "lien" under § 5162.211 is governed by a different statutory process and also carries different functions and legal effects. The imposition of a lien requires the "Medicaid director or a person designated by the director" to "sign a certificate to effectuate [the] lien." Ohio Rev. Code § 5162.211(D). That describes a different process than the one the Code describes for the affidavits.

Additionally, the function and effect of these instruments is different. Affidavits of fact are evidentiary—their function is to provide *notice*. *Bradford*, 710 N.E.2d at 764. By contrast, Ohio cases defining the term "lien" (albeit generally, rather than in the specific context of § 5162.211) say that a lien is a "charge or security or encumbrance upon property." *DeepRock Disposal Sols., LLC v. Forte Prods., LLC*, No. 20CA15, 2021 WL 1590227, at *27 (Ohio Ct. App. Apr. 21, 2021). A key feature is the "binding" effect of the "liability." *Id.* (citations omitted). At bottom, a "lien" actually *asserts* an interest in the property. *See id.*

As this description should make clear, the two instruments (an affidavit of fact and a lien) possess different—and inconsistent—features. One is legally inert, save for its notice function. And the other imposes a claim on property. So, in the end, Plaintiffs' argument is based on a mistaken conflation of two different instruments. Plaintiffs lay out an elaborate, multi-step argument based on the affidavit-as-lien

16

theory. (*See* Doc. 16, #227–34). But because *all* of it rests on a false premise, the entire edifice crumbles.[4]

Next, the Court considers Plaintiffs' § 1692f theory and concludes that it, too, fails. Plaintiffs appear to rely on the acts discussed above to support their § 1692f claims. But they fail on the merits because there is nothing "unfair" or "unconscionable" about Defendants' acts.[5] 15 U.S.C. § 1692f.

---

[4] Several portions of Plaintiffs' briefing lend support to the conclusion that Plaintiffs are contending that the affidavits *are* liens. (*See, e.g.*, Doc. 16, #227 ("By filing Affidavits of Fact, Defendants imposed false liens on Plaintiffs' homes."); *id.* at #228 ("Defendants contend that any *assertion of a lien in Paragraph 6* cannot be false." (emphasis added))). But, in fairness to Plaintiffs, another reading of their position is at least possible. It could be that Plaintiffs concede the conceptual difference between an affidavit of fact and a lien, but nonetheless believe that the affidavits falsely *represent* that Defendants possess a lien on Plaintiffs' homes, a lien that was procured in some other fashion. In other words, on this view, the material falsity in Defendants' acts would not consist in *asserting* a lien without proper authorization, but rather in *representing* that Defendants have *already secured* an "interest in the property" by some other means. (*See, e.g.*, *id.* at #228 ("Defendants filed an Affidavit of Fact *falsely claiming* that the State 'maintains *an interest in the property*' when the only possible means by which the State can acquire an interest in the Plaintiff[s'] property is by the imposition of a lien." (emphasis added))). But even if this is what Plaintiffs are arguing (which the Court doubts), that would not change the outcome. As Defendants point out, Plaintiffs provide no legal support for the view that "the only possible means by which the State can acquire an interest in Plaintiff[s'] property is by the imposition of a lien." (Doc. 18, #249). And that's because no such citation exists. A Medicaid recipient "subject[s] his 'estate' to recovery and adjustment under the laws of Ohio" by "apply[ing] for and receiv[ing] Medicaid benefits from the Ohio Medicaid program." *Admr., State Medicaid Est. Recovery Program v. Miracle*, 31 N.E.3d 658, 663 (Ohio Ct. App. 2015). So, while it is true that Ohio law bars imposing actual "liens" on Plaintiffs' respective homes under these circumstances, Plaintiffs err in asserting that the state's "claim" or "interest" in a decedent's estate arises only by virtue of a lien. And the affidavits of fact, by their express terms, did not assert a "lien," but instead only a "claim" under the Medicaid Recovery Statute, which accurately represents the interest at issue.

[5] Admittedly, Defendants do not separately address the § 1692f claim at length. But, as the Court reads Plaintiffs' Complaint, the same conduct that underpins the § 1692e claim also underpins the § 1692f claim. (*See* Doc. 1, #15 ("Defendants violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt, including, without limitation, the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) that was not permitted by law.")). But the conduct at

17

In sum, for the reasons stated, the Court dismisses Plaintiffs' FDCPA claims **WITH PREJUDICE.**

### B.    Plaintiffs' Complaint Fails to State a Slander of Title Claim Because the Affidavits of Fact are True and Accurate.

Next, the Court takes up Plaintiffs' slander of title claims. These, too, fail as a matter of law.

The same flaws that doom Plaintiffs' FDCPA claims also doom their slander of title claims. To survive a 12(b)(6) challenge, a complaint must allege a false statement. *Green v. Lemarr*, 744 N.E.2d 212, 224 (Ohio Ct. App. 2000). Here, the allegedly false statement—the assertion of the "liens" —shows up in the affidavits of fact. But as detailed above, the affidavits do not "falsely" assert liens on Plaintiffs' properties because they are not liens at all. The affidavits therefore do not need to comply with the statutory requirements for a lien. So, because that premise is also central to Plaintiffs' slander of title claims, they fail for the same reason. (Doc. 16, #242). The Court therefore **DISMISSES** Plaintiffs' slander of title claim **WITH PREJUDICE.**[6]

---

issue is not unconscionable for the same reasons that it is not false, deceptive, or misleading. Thus, the § 1692f claim fails.

[6] This is consistent with the Court's prior opinion on Article III standing. (*See* Doc. 11; *cf.* Doc. 18, #248 n.1 ("Plaintiffs make too much of this Court's earlier decision of subject matter jurisdiction.")). There, the Court held that Plaintiffs had adequately alleged a "property-infringement theory of injury" because they "allege[d] that the affidavits Defendants filed injured them by improperly placing a cloud on the title to their properties." (Doc. 11, #109). That, of course, is enough to create an injury for Article III purposes. (*See id.*). But the Court expressly left open the separate question whether Defendants' acts were *improper*. (*Id.* at #110). And having now examined the character of the alleged wrong and found each of Plaintiffs' legal theories lacking, the Court determines that dismissal is warranted on the merits.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 15), **DISMISSES** this case **WITH PREJUDICE**, and directs the Clerk to enter judgment and **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

March 16, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

19